

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CORTNEY CHUNN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **5:20 -cv-01982-LSC** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The Plaintiff, Cortney Chunn ("Ms. Chunn" or "Plaintiff"), appeals from the decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB"). Ms. Chunn timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Chunn was 35 years old at the time of her application on May 10, 2019. (*See* Tr. at 141.) She has a high school education. (Tr. at 194.) Ms. Chunn previously

worked as a production welder, delivery driver, cable installer, customer service representative, machinist mate, and waitress. (Tr. at 24, 44, 220.) Ms. Chunn claims that she became disabled on April 1, 2019. (Tr. at 141.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* at §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent his from performing his past relevant work, the evaluator will make a finding of not disabled. *Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If

the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since April 1, 2019, the alleged onset date of her disability. (Tr. at 17.) The ALJ further found that Plaintiff's obesity; degenerative joint disease of the knees; cervical and lumbar strains; history of a gunshot wound with residual left foot drop; post-traumatic stress disorder (PTSD); and anxiety qualify as severe impairments. (*Id.*) However, the ALJ found that Plaintiff's impairments neither meet nor medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18.) The ALJ determined that Plaintiff's asthma, obstructive sleep apnea, and migraine headaches were non-severe impairments because they do not impose more than minimal limitations on Plaintiff's ability to perform work-related functions. (Tr. at 17–18.) The ALJ also found Plaintiff to have the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except that she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk six hours and sit six hours in an eight-hour workday with the option to sit or stand for a few minutes every hour while continuing to work. She can occasionally climb ramps and stairs, balance, kneel, crawl, stoop, crouch and bend or twist at the waist. The

claimant should avoid climbing ladders and working at unprotected heights. She can perform work with occasional cooperation and interaction with co-workers and supervisors, but should have no contact with the public. The claimant can maintain concentration, persistence and pace for two-hour intervals in an eight-hour workday for one- to three-step job tasks or instructions.

(Tr. at 20.)

Relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff is unable to perform any of her past relevant work based on her age, education, work experience, and RFC. (Tr. at 24.) The ALJ also established that Plaintiff is a "younger individual age 18-49" at 35 years old, has at least a high school education, and is able to communicate in English, as those terms are defined by the regulations. (*Id.*) The ALJ concluded that transferability of job skills "is not material to the determination of disability [in this case] because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 24–25.)

Using the Medical-Vocational Rules as a guideline and considering the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform, such as a hand packager, inspector, parts grader, or garment sorter. (Tr. at 25.) The ALJ concluded her findings by stating that Plaintiff "has not

been under a disability, as defined in the Social Security Act, from April 1, 2019,"

through March 27, 2020, the date the ALJ's decision was entered. (Tr. at 26.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is

a narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the

commissioner, and (2) whether the correct legal standards were applied. *See Stone v.*

*Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference

to the factual findings of the Commissioner, provided those findings are supported

by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles*

*v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute

its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir.

2004)). "The substantial evidence standard permits administrative decision makers

to act with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181

(11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.   Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons: (1) the ALJ's decision was constitutionally defective because the Commissioner, from whom the ALJ derived her authority to decide the case, was subject to an unconstitutional removal restriction; (2) the ALJ did not base her determination of Plaintiff's RFC on substantial evidence because she failed to properly consider Plaintiff's subjective complaints; and (3) the ALJ failed to apply

the correct legal standards in weighing the opinion of Dr. Harvey Asher, Board Certified Psychiatrist. (Doc. 7 at 7, 13.)

### A. The ALJ's decision is not constitutionally defective.

Ms. Chunn argues that the ALJ's decision violated the separation of powers doctrine because the ALJ who adjudicated Ms. Chunn's claim derived her authority to do so from a Commissioner who was unconstitutionally insulated from removal. (Doc. 7 at 8.) Ms. Chunn bases her argument on *Seila L. L.L.C. v. Consumer Financial Protection Bureau* ("CFPB"), 140 S. Ct. 2183 (2020), in which the Supreme Court found the structure of the CFPB unconstitutional because it is an independent agency led by a singular head who serves for a longer term than the President and is removable only for cause. 140 S. Ct. at 2204. Ms. Chunn contends that the structure of the SSA is similarly unconstitutional because it is led by a single Commissioner who serves a six-year term and whom the President may only remove "pursuant to a finding . . . of neglect of duty or malfeasance in office." (Doc. 7 at 8); 42 U.S.C. § 902(a)(3). The Commissioner subject to the removal restriction at the time the ALJ and Appeals Council rendered decisions regarding Ms. Chunn's case was Andrew Saul ("Commissioner Saul"). In Ms. Chunn's view, Commissioner Saul had no constitutional authority, by virtue of the removal restriction, to render such decisions nor to promulgate regulations. (Doc. 7 at 8.) Because the ALJ derived her

decision-making authority from Commissioner Saul and decided the case "under regulations promulgated by [Commissioner] Saul when [Commissioner] Saul had no constitutional authority to issue those rules," Ms. Chunn contends that Commissioner Saul's unconstitutional insulation from removal deprived her of a "valid administrative adjudicatory process" and rendered the ALJ's decision in her case invalid. (Doc. 7 at 9.)

The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers doctrine insofar as it restricts the President's authority to remove the Commissioner without cause. (Doc. 8 at 5–6 (citing Off. of Legal Couns., U.S. Dep't of Just., Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot., 2021 WL 2981542 (July 8, 2021)).) However, the Commissioner argues that the unconstitutionality of the removal provision does not, without more, affect the validity of the ALJ's determination in Ms. Chunn's case. (Doc. 8 at 6.)

Even assuming that the removal provision under 42 U.S.C. § 902(a)(3) is in fact unconstitutional, as the parties here agree, Plaintiff's assertion that the ALJ's unfavorable decision is consequently void nonetheless fails. As an initial matter, an unconstitutional *removal* provision does not automatically void the actions that a properly *appointed* Commissioner took pursuant to the responsibilities of his office. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("Although the statute

unconstitutionally limited the President's authority to *remove* the confirmed [agency head], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency head] . . . as void."). An unconstitutional restriction on the President's power to remove the Commissioner at will "does not strip the [Commissioner] of the power to undertake the other responsibilities of his office." *Id.* at 1788 n.23 (citing *Seila*, 140 S. Ct. at 2207–11); *see also Robinson v. Kijakazi*, No. 1:20-CV-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) (rejecting the argument that all of the Commissioner's actions are void due to the unconstitutional removal restriction). Numerous district courts have rejected the same argument based on *Seila*. *See, e.g.*, *Hughes v. Kijakazi*, No. 20-2374, 2022 WL 1256704, at *19 (E.D. La. Mar. 9, 2022) ("An unconstitutional removal provision does not automatically void every action of the agency.") (citing *Collins*, 141 S. Ct. at 1789), *R. & R. adopted*, No. 20-2374, 2022 WL 1238628 (E.D. La. Apr. 26, 2022).

Rather, a plaintiff seeking relief based on an unconstitutional removal restriction must establish a nexus between the restriction and the plaintiff's alleged harm. *See id.* at 1789 (holding that a plaintiff has standing to challenge an unconstitutional removal restriction where the plaintiff claims that the statutory provision inflicted compensable harm); *see also Pamela Joyce B. v. Kijakazi*, No. 1:21-

CV-00087-H-BU, 2022 WL 3161941, at *10 (N.D. Tex. July 21, 2022) (holding that a plaintiff has no right to *de novo* review unless the plaintiff shows a connection between the removal restriction and the plaintiff's harm or points to facts showing that the ALJ would have likely made a different decision but for the unconstitutional removal provision), *R. & R. adopted sub nom. Pamela B. v. Kijakazi*, No. 1:21-CV-087-H-BU, 2022 WL 3159273 (N.D. Tex. Aug. 8, 2022) ("*Pamela B.*"). In an action challenging an ALJ's denial of Social Security benefits on separation of powers grounds, a plaintiff must show that the removal restriction in 42 U.S.C. § 902(a)(3) either caused or increased the likelihood of the denial of the plaintiff's claim. *See Pamela B.*, 2022 WL 3161941, at *9 ("Simply alleging that a plaintiff's constitutional removal-clause protections have been violated is insufficient to show the required connection, unless the claimant can demonstrate that the effect of the removal clause 'made it more or less likely that her applications would be denied.'") (quoting *Hughes*, 2022 WL 1256704, at *20). The plaintiff must point to particular regulations or actions by the insulated Commissioner that harmed the plaintiff's chances of a favorable decision. *See Hughes*, 2022 WL 1256704, at *21 ("[A] vague reference to regulations issued by a commissioner subject to an unconstitutional removal provision is not enough to require remand.") (citing *Rhouma v. Comm'r of Soc. Sec.*, 575 F. Supp. 3d 904, 918 (N.D. Ohio 2021)); *see also Lisa Y. v. Comm'r of Soc. Sec.*,

570 F. Supp. 3d 993, 1003 (W.D. Wash. 2021) (holding that a plaintiff had not satisfied the nexus requirement because the plaintiff did "not identif[y] any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims.").

Plaintiff raises no arguments suggesting that Commissioner Saul was improperly appointed. Plaintiff merely makes a conclusory allegation that the removal restriction made Commissioner Saul's exercise of authority unconstitutional in its entirety, thus invalidating the actions of ALJs to whom Commissioner Saul delegated decision-making authority. Commissioner Saul's proper appointment, though, provided him the necessary regulatory and adjudicatory authority to decide Plaintiff's claim; his insulation from removal does not affect the validity of such a decision unless Plaintiff demonstrates that the removal restriction caused her compensable harm. *See Collins*, 141 S. Ct. at 1788 n.23.

To that point, Plaintiff fails to show any connection between Commissioner Saul's insulation from removal and the denial of Plaintiff's claim. Plaintiff merely alleges that the ALJ decided her case pursuant to regulations that Commissioner Saul promulgated without explaining how or why the regulations possibly disadvantaged her claim for benefits. Plaintiff simply argues that, because

Commissioner Saul was subject to an unconstitutional removal restriction, any or all regulations that he promulgated imposed a "presumptively inaccurate legal standard" according to which the ALJ decided her claim for benefits. (Doc. 7 at 9.) Plaintiff does not indicate how any specific changes that Commissioner Saul implemented would have made her claim more or less likely to be denied, nor does she explain how the denial of her claim is traceable to any particular action by Commissioner Saul. Nothing in the facts that Plaintiff alleges suggests that Commissioner Saul's insulation from removal had any bearing on the ALJ's decision in Plaintiff's case.

Plaintiff presented no facts showing a connection between the 42 U.S.C. § 902(a)(3) removal restriction and the denial of her claim, nor did she demonstrate that the provision made the ALJ more likely to deny her claim. Plaintiff's argument of a constitutional defect in the ALJ's and Appeals Council's decisions due to the removal restriction is without merit irrespective of whether the statutory provision is in fact unconstitutional.

### B. The ALJ Properly Considered Plaintiff's Subjective Statements in Evaluating Plaintiff's RFC.

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the

presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225-26. In evaluating the extent to which the plaintiff's symptoms, such as pain, affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of the plaintiff's symptoms, (3) the plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the plaintiff takes to relieve symptoms, and (8) any conflicts between the plaintiff's

statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.

929(c)(3), (4); SSR 16-3p.

In order to discredit a plaintiff's statements, the ALJ must clearly "articulate

explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at

1561). A credibility determination is a question of fact subject only to limited review

in the courts to ensure the finding is supported by substantial evidence. *See Hand v.*

*Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774

F.2d 428 (11th Cir. 1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir.

1986). Courts in the Eleventh Circuit "will not disturb a clearly articulated finding

supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d

780, 782 (11th Cir. 2014) (citing *Foote*, 67 F.3d at 1562). "The question is not . . .

whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but

whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*,

421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ found that the impairments underlying Plaintiff's medical

conditions could be reasonably expected to cause her alleged symptoms, satisfying

the first part of the pain standard. (Tr. 23.) However, the ALJ found that Plaintiff's

statements concerning the intensity, persistence, and functionally limiting effects of

these alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

Plaintiff relies on *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021) in contending that the ALJ should have accounted for the differences in stress levels between a medical clinic and a work environment when evaluating Plaintiff's medical records against Plaintiff's subjective allegations before discounting Plaintiff's subjective complaints as inconsistent with the medical evidence. (*See* doc. 7 at 15.) Plaintiff's reliance here is misplaced. Under *Simon*, an ALJ cannot dismiss a *treating physician's* opinions as inconsistent with other medical findings in the record without taking into account "the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace." 7 F.4th at 1107. Here, though, the ALJ notes the inconsistency between Plaintiff's subjective complaints and objective medical findings in the record, not an inconsistency between one medical opinion and other medical findings in the record. (*See* tr. at 23.)

Plaintiff also refers the Court to *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019). (Doc. 7 at 15.) Under *Schink*, an ALJ may not find a treating psychiatrist's opinion inconsistent with the psychiatrist's own records merely because "some of [the claimant's] mental status examinations were better than

others." 935 F.3d at 1262-63 ("It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's [own] opinion by proving no more than that the claimant's impairments are not all-encompassing." (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986))). Again, however, Plaintiff mistakenly attempts to equate the improper dismissal of *medical* opinions as *internally* inconsistent with the finding of Plaintiff's subjective complaints as inconsistent with or not supported by the objective medical evidence in the record as a whole.

Plaintiff argues that the ALJ cherrypicked excerpts from treatment providers' notes in order to disregard the severity and persistence of Plaintiff's symptoms. (Doc. 7 at 15.) Plaintiff testified that she has a limited ability to communicate well with others; that she is good in "one-on-one" situations but does not do well with crowds; that she tends to leave her house only once a week for doctor's appointments; that she has nightmares about three times per week; that she has seven to ten "bad days" per month during which she isolates herself in her room; and that she has suicidal thoughts, but counseling has helped her to cope. (Tr. at 35, 36, 39–41.) Plaintiff further alleges that the fact that she lost her job at Polaris Industries due to a verbal altercation with a coworker provides additional evidence of her worsening symptoms. (Doc. 7 at 16-17; tr. at 35, 42, 218.)

In Plaintiff's view, the ALJ ignored these "clear occasions where the providers indicated that [her] condition was worsening rather than improving." (Doc. 7 at 15.) However, the treatment records to which Plaintiff points include only Plaintiff's subjective complaints of worsening symptoms with no indication that Plaintiff's treatment providers agreed that Plaintiff's condition was in fact worsening. (*See* tr. at 363, 432, 777; doc. 7. at 15.) Indeed, he ALJ stated that there was no objective medical evidence indicating that Plaintiff's symptoms were worsening. (Tr. at 24.) The ALJ remarked that Plaintiff reported an "ok" mood and denied any distressing psychiatric symptoms during a visit with psychiatric nurse practitioner Genyce Burkett on February 20, 2019. (Tr. at 23, 324.) The ALJ pointed out that, although Plaintiff reported increased anxiety during a subsequent visit with Burkett on May 10, 2019, Burkett described Plaintiff as having a bright affect and normal mental status with no suicidal ideation. (Tr. at 23, 305.) The ALJ mentioned that Burkett reported another normal mental status examination of Plaintiff on July 9, 2019. (Tr. at 23, 426-28.) Furthermore, the ALJ observed that Plaintiff began psychotherapy treatment with social worker Ashley Madrey on September 4, 2019, who described Plaintiff as having a euthymic mood with normal attention and concentration. (Tr. at 23, 743, 746.) The ALJ also discussed that Plaintiff reported a suicide attempt to Madrey on October 29, 2019, after which Plaintiff consistently

presented with normal mental status examinations and reported an improved mood, decreased symptoms, and no suicidal ideations. (Tr. at 23, 673, 701-02, 706, 726-27.) Finally, the ALJ noted that Plaintiff's own account indicated that Plaintiff was able to take steps to alleviate her symptoms, including playing basketball, writing poetry, and caring for her goddaughter. (Tr. at 23, 701, 706.) Here, the providers' reports regarding Plaintiff's mental status duly account for both Plaintiff's affect during the treatment session as well as Plaintiff's self-reported symptoms and activities. (*See* tr. at 305, 324, 426-28, 673, 701-02, 706, 726-27, 743, 746.)

The ALJ also considered Plaintiff's prior employment at Polaris Industries for purposes of assessing Plaintiff's ability to perform work-related activities notwithstanding Plaintiff's allegedly disabling impairments. (*See* tr. at 24.) *See also Kaplowitz v. Acting Comm'r of Soc. Sec.*, 806 F. App'x 711, 718 (11th Cir. 2020) (affirming an ALJ's determination of the claimant's credibility where the ALJ relied in part on the claimant's ability to work with the allegedly disabling impairments prior to the claimant's alleged onset date). Plaintiff argues that the ALJ improperly disregarded the fact that Plaintiff lost her job at Polaris Industries due to a verbal altercation, which Plaintiff cites as evidence of her worsening symptoms. (Doc. 7 at 16-17.) However, the ALJ acknowledged that Plaintiff is unable to perform any of her past relevant work, thus demonstrating that Plaintiff's employment at Polaris

Industries during a time in which Plaintiff suffered from the allegedly disabling impairments was not the ALJ's sole consideration in determining Plaintiff's RFC. The ALJ properly considered Plaintiff's prior employment at Polaris and determined that Plaintiff ultimately retains the ability to transfer her learned work skills to other "jobs that exist in significant numbers in the economy." (Tr. at 25.) Furthermore, the ALJ considered the medical opinion of state agency medical consultant Victoria Hogan, M.D. (Tr. at 23, 62-66.) Dr. Hogan opined that Plaintiff may have difficulty concentrating on detailed tasks, but she determined that Plaintiff is capable of completing one- to two-step tasks for at least two-hour periods at a time without the need for special supervision or extra breaks. (Tr. at 65.) Dr. Hogan concluded that Plaintiff is capable of completing a typical eight-hour workday as long as customary breaks are provided. (Tr. at 65.) The RFC finding from the ALJ presents limitations but also demonstrates Plaintiff's ability to perform many basic, work-related activities. (Tr. at 23-24.) To that end, the ALJ found that Plaintiff could perform work that requires occasional cooperation and interaction with coworkers and supervisors with the limitation that Plaintiff should have no interaction with the public. (Tr. at 20.)

The ALJ properly considered the objective medical evidence as a whole, acknowledging that Plaintiff regularly reported her symptoms of PTSD and anxiety

to her psychiatric nurse practitioner and therapist but noting that they nonetheless did not indicate that her symptoms were worsening (Tr. at 23-24); *see also Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 864 (11th Cir. 2019) (holding that the ALJ properly based his decision "on the evaluation of mental status examinations that took a broad view of [the claimant's] mental state and activities" and included "information that was based on [the claimant's] own reports of his mental states and activities outside of the treatment room."). Accordingly, the ALJ did not disregard but rather accounted for Plaintiff's subjective complaints in conjunction with objective medical records, which constituted substantial evidence for the ALJ's determination of Plaintiff's RFC.

## C. The ALJ applied the correct legal framework in weighing the medical opinion of Dr. Harvey Asher.

Plaintiff argues that the ALJ failed to accord proper weight to the opinion of Dr. Harvey Asher, Board Certified Psychiatrist. (Doc. 7 at 12.) Plaintiff contends that the ALJ "fail[ed] to engage with significant portions of Dr. Asher's opinion and findings" and erroneously afforded more weight to the opinion of state agency psychiatric consultant, Dr. Robert Estock. (*Id.* at 12-13.)

New regulations came into effect in 2017, which govern this case. These new regulations provide revised instructions to the ALJ for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare

that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings, with the most important factors being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. While the ALJ must explain the role of the supportability[1] and consistency[2] factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors. *Id.* In responding to comments to these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and objective framework for considering medical opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or

---

[1] In addressing the supportability factor, the regulations instruct, "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

[2] In regard to the consistency factor, the regulations similarly explain, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

In contrast, 20 C.F.R. §§404.1527 and 416.927, the regulations that govern claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Indeed, if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527, 416.927.

In one of the few Eleventh Circuit cases that mention this issue, the court stated that, "[f]or claims filed on or after March 27, 2017, . . . no significant weight is given to statements made by treating physicians as opposed to non-treating medical sources." *Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 497 n.1 (11th Cir. 2021). The court went on to explain that even under the regulations that apply to claims filed before March 27, 2017, the ALJ could still reject the treating physician's opinion in certain circumstances when it was not supported by the evidence. *Id.* at 497.

Plaintiff originally filed her claim on May 10, 2019, over two years after the new regulations took effect. (Tr. 15, 141-43). She provides no basis for asserting that the treating physician rule is still in effect, nor did she refute the Commissioner's argument that the new regulations should apply in her reply brief. Accordingly, the Court finds no reason to apply the treating physician rule in this case.

Plaintiff references the Disability Benefits Questionnaire that Dr. Asher completed when he examined Plaintiff on December 7, 2018, as the basis for her argument that the ALJ did not give proper weight to Dr. Asher's opinion. (Doc. 7 at 11; tr. at 361-68.) Dr. Asher's evaluation of Plaintiff includes, *inter alia*, a diagnostic summary of Plaintiff's PTSD; Dr. Asher's clinical findings, including a checklist of PTSD diagnostic criteria; a list of Plaintiff's symptoms; Dr. Asher's behavioral observations of Plaintiff; and Dr. Asher's additional remarks. (Tr. at 361-68.) Dr. Asher found that Plaintiff had an "[o]ccupational and social impairment" and that she was "too irritable and isolated to work." (Tr. at 362-63.) He noted in his remarks that Plaintiff displayed "significant symptoms of PTSD," including "hyper vigilance, chronic sleep disturbance, flashbacks, poor concentration, depression," isolation, and irritability. (Tr. at 367.) Dr. Asher also stated that Plaintiff's symptoms appeared to be worsening, "especially concerning isolation and irritability." (*Id.*) Dr. Asher concluded that Plaintiff's PTSD "renders [Plaintiff] unable to secure and

maintain substantially gainful employment . . . because of poor concentration, depression, poor sleep, isolating more and having marked irritability." (Tr. at 368.)

The ALJ found that Dr. Asher's opinion was not persuasive. (Tr. at 22.) Substantial evidence supports that decision. The ALJ noted — and Plaintiff concedes — that Dr. Asher identified no specific functional limitations that Plaintiff may have because of her symptoms. (Tr. at 22-23; doc. 7 at 12.) Rather than explaining how Plaintiff's symptoms imposed functional limitations on Plaintiff's ability to work with any degree of particularity, Dr. Asher simply made a blanket statement that Plaintiff presented certain symptoms and that those symptoms prevented Plaintiff from engaging in any substantially gainful employment. (Tr. at 368.) In failing to explain how Plaintiff's symptoms had any functionally limiting effect, Dr. Asher expressed not an opinion but a statement on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c). The ALJ correctly stated that the decision as to whether Plaintiff can engage in substantially gainful employment lies within the sole purview of the Commissioner and refused to consider Dr. Asher's statement on the matter because such a statement is "inherently neither valuable nor persuasive." (Tr. at 22-23); *see* 20 C.F.R. § 404.1520b(c). Accordingly, substantial evidence supports the ALJ's decision to disregard Dr. Asher's medical opinion as unpersuasive.

## IV.    Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 8, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

211913